ESTHER WETHERILL *et al. vs.* ELLEN JANE MOORE *et al.*

JULY 9, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill in equity to set aside certain deeds of real estate. The cause was heard in the superior court on bill, answers, replications and proof, and thereafter that court entered a decree setting aside the deeds on the ground that they had not been delivered. From that decree the respondents have appealed to this court.

The deeds in question were executed by Thomas F. Moore and Ellen J. Moore, his wife, at their home on Hamilton street in Providence, this state, on December 4, 1942 in the presence of two attorneys who attended to the drafting and execution of the deeds. Those attorneys are father and son, and each testified as a witness in the instant cause. Hereinafter the father will be referred to as the senior attorney, and the son as the junior attorney. Thomas F. Moore, who was then seventy-nine years of age, was ill and died a month later on January 5, 1943. His wife was seventy-six years old and for several years prior to December 4, 1942 her memory and vision had been failing. Several of her children testified that she was, at that time, mentally ill. Mr. and Mrs. Moore owned, as joint tenants, their home on Hamilton street, and several other parcels of real estate situated in Providence. Mr. Moore owned another parcel situated in Coventry. All of this real estate was variously conveyed by the deeds in question to their children, Esther Wetherill, Gertrude L. Fox, Mary E. Boutier, Nellie J. Moore, Eva V. Moore, Joseph Moore, and Thomas Francis Moore.

Esther and Gertrude brought the instant bill of complaint against their mother, Ellen J. Moore, and Mary, Nellie, Eva and Joseph. Thomas originally signed the bill, but later, before the hearing in the superior court, withdrew as a party complainant. After the cause had been heard and the trial justice had taken it under advisement a petition for appointment of a guardian *ad litem* for Ellen J. Moore was filed. The trial justice entertained the petition and, after a hearing thereon, granted it on the ground that she was incompetent some time before and since the bill of

complaint was filed. A guardian *ad litem* for her was thereupon duly appointed.

After investigation of the circumstances surrounding the transactions upon which the bill of complaint was based, and the facts concerning Ellen J. Moore's participation therein, the guardian *ad litem* moved to strike out the answer which had been filed in her behalf by counsel for the other respondents. He also asked that an accounting be had from Nellie J. Moore, who had been managing the real estate and collecting the income thereof since her father's death, and also that dower be assigned to Ellen J. Moore out of her husband's real estate in Coventry. He submitted her rights in the real estate situated in Providence to the protection of the court.

The trial justice, upon hearing that motion, struck out the answer of Ellen J. Moore and ordered Nellie J. Moore to account for her management of the real estate. During the proceedings Nellie J. Moore duly filed such account, which was not objected to either by the guardian *ad litem* or by the other parties in interest. The trial justice ordered it received, but decided to take no action upon it, leaving it to be further considered if the parties so desired in some subsequent proceedings. The guardian *ad litem* then filed an answer, and later an amended answer in which he submitted the rights of Ellen J. Moore in the matter in controversy under the bill to the protection of the superior court.

The bill of complaint, among other things, alleged that Thomas F. Moore and Ellen J. Moore were lacking in mental capacity to understand the nature of their acts in executing the deeds in question; that they were then subject to the influence, control and domination of respondent Nellie J. Moore; that said deeds were not delivered to the grantees severally named therein; and that they were, therefore, nugatory, invalid and ineffectual. The answers of the respondents substantially denied each of those allegations and left complainants to their proof.

After all the evidence had been presented, including that pertaining especially to the alleged incompetency of Ellen J. Moore which necessitated the appointment of a guardian *ad litem,* and it appearing that the real estate situated in Providence was held by Mr. and Mrs. Moore as joint tenants, the trial justice, on the motion of the respondents, dismissed the bill as to them so far as such real estate was concerned, but as to Mrs. Moore, notwithstanding that she was one of the original respondents, he retained jurisdiction of the bill. He did this, as he held, in order to determine the validity of all the deeds and thus protect the rights of Mrs. Moore.

He thereupon carefully reviewed the evidence and made the following findings: That, on December 4, 1942, Thomas F. Moore was competent to execute the deeds in question; that Mrs. Moore was, at that time, in such a mental state that she did not understand or appreciate the nature and character of such deeds nor the instructions which her husband may have given counsel respecting delivery thereof; that neither was then subject to the influence, control or domination of respondent Nellie J. Moore; and that, on December 4, 1942, Thomas F. Moore did not intend to vest a present title in any of the several grantees when he handed the deeds to his attorney, but that he then intended the deeds in question to pass such title only in the event of and after his death. The trial justice, therefore, found that all the deeds "should be set aside and cancelled and declared of no legal force and effect to convey any title to the several parties named therein."

From the decree embodying those findings, only the respondents have appealed. In support of such appeal, they contended that the trial justice erred in finding that the deeds had not been delivered. They also contended in their brief that he erred in finding that Mrs. Moore was incompetent to execute the deeds, but in the oral argument before us they have expressly waived that contention.

Complainants contend that the evidence fully supports

the findings that the deeds were not delivered by Thomas F. Moore and that they were intended by him to take effect only after his death. Moreover, they rely upon the rule that such findings cannot be disturbed by this court unless they are clearly wrong. *Lockwood* v. *Rhode Island Hospital Trust Co.*, 62 R. I. 494. Respondents concede the rule but contend that the great weight of the evidence proves that the deeds were delivered and that the findings are, therefore, clearly wrong. Furthermore they contend that the complainants had the burden of proving by clear and convincing evidence that the deeds had not been validly delivered, and also that they, the respondents, were not charged with the duty "to justify their claim of title under these deeds."

This latter contention avails the respondents nothing in the circumstances here. When the controversy between the parties arose the deeds were not in the hands of the several grantees. They were still in the possession of Mr. Moore's attorney where he had placed them. Ordinarily, proof of possession of a deed by one named therein as grantee may be considered as *prima facie* proof of delivery of the deed so as to place the burden of proving lack of delivery upon the one who asserts it. But where one is claiming under a deed of gift and is asserting that delivery thereof was made to a third person for his benefit the burden is upon him to prove the incidents necessary to the validity of the gift. In the circumstances here it is claimed that Thomas F. Moore placed the deeds in the hands of his attorney intending to make a present and irrevocable gift to the several grantees named therein. A necessary incident to such a gift was delivery of the deeds. It was, therefore, incumbent upon the respondents to prove that when Mr. Moore placed the deeds in the hands of his attorney it was his intention to divest himself presently of the title to the real estate described in the deeds and to vest it in the several grantees named therein. The only question here which we must determine is whether the

evidence in this regard is so weighty that we must needs hold that the trial justice was clearly wrong in finding that the deeds were not delivered.

■ We have carefully read the transcript and we are of the opinion that the evidence favorable to the respondents' contention lacks such weight. The circumstances of the signing and delivery of the deeds on December 4, 1942 have been testified to by the attorneys who attended to the drafting and execution of the deeds. According to their testimony they were called to Mr. Moore's home on December 2, 1942 and there received from him detailed instructions as to the drafting of the deeds. On December 4, 1942 they returned with the deeds and Mr. Moore executed them and placed them in the hands of the senior attorney. What was said by Mr. Moore at that time is known only to the attorneys, as the only other person in the room was Mrs. Moore who, it has been found, was then incompetent and did not understand the business that was being transacted.

The junior attorney testified that, after Mr. Moore had executed the deeds, he asked him: "Now what do you want done with these deeds?" and that he replied: "Do those deeds have to be put on record?" "Eventually they should be put on record" the attorney answered, but he also told him that there would have to be a delivery of the deeds, whereupon Mr. Moore asked if they could be left with the senior attorney. Further testifying, the junior attorney said that he told Mr. Moore that if he intended to divest himself of the title at once and vest it in his children he could hand the deeds to the senior attorney, for their benefit, but that by doing so he would lose control over the deeds and could not recall them. He testified that Mr. Moore said that would be satisfactory and then handed the deeds to the senior attorney.

Immediately thereafter, according to the testimony of the junior attorney, Mr. Moore said that he would leave the matter of recording the deeds to the judgment or discretion

of the senior attorney. Later on, in his cross-examination, the junior attorney admitted that he did not use the technical words "divest of title" in his conversation with Mr. Moore but stated that he had "explained the situation to him."

The senior attorney testified that after the deeds were executed Mr. Moore said to him: "I am going to give them to you . . . and to use your discretion in the matter." He also testified that his son had told Mr. Moore "there must be a complete surrender of the deeds and title from that moment." He further testified that he took the deeds to his office in Olneyville; that some time in the early spring of 1943 he handed them to his son at his office in Providence; and that he, the senior attorney, did not see them again. But, in cross-examination, he testified quite definitely that Mr. Moore said to him that he, Moore, was going to give the deeds to him and would "leave them to your discretion." He later corrected that testimony and stated that what Mr. Moore said was: "I am going to give these to you so that you men would use your discretion." He testified that he was positive Mr. Moore made that statement to him as he handed him the deeds.

It appeared from the evidence that Mr. Moore wished to favor his daughter, Nellie J. Moore, who lived at home and cared for him and his wife, and that he wished to avoid making any trouble for her. Under the deeds as drawn she received four parcels of real estate and the rest were variously conveyed to her brothers and sisters. If Mr. Moore intended merely to leave it to the discretion and judgment of his attorneys whether to record the deeds or keep them secret in the lifetime of Mr. Moore, that would not affect the validity of the deeds, provided he intended to part presently with the title. But if he intended to leave to the discretion or judgment of his attorneys whether or not to deliver the deeds in order to avoid trouble for Nellie, that would be an entirely different matter and would unquestionably make the deeds invalid. If the junior

attorney's testimony on this matter could be reconciled with the long delay in acquainting the children of Mr. Moore, after his death, with what he had given to each of them by the deeds, then such testimony could reasonably support the view that Mr. Moore's statement, about the matter being left to the attorneys' discretion or judgment, related only to recording the deeds. However, the senior attorney's testimony with reference to the same matter, standing alone, submits to a different reasonable interpretation, namely, that Mr. Moore handed him the deeds to use according to his and his son's discretion or judgment in order, if possible, to save Nellie J. Moore any trouble in the matter.

That there was something indefinite about the nature of the deeds in the minds of Mr. Moore's attorneys would seem to be indicated by their failure to acquaint the grantees with their rights under such deeds within a reasonable time, especially after Mr. Moore's death. At least it was reasonable for the trial justice to think so in making his decision. Aside from telling Nellie on the night of December 4, 1942 that some deeds had been executed by her father and mother, they informed none of the other children of such deeds until late in February, 1943, or some time in the early spring when some of the children caused inquiries to be made. Indeed, on January 10, 1943 the junior attorney attended a conference of all the children at the Moore home on Hamilton street and drew a paper which all but one of the children signed appointing Nellie to manage all of the real estate in question and collect the rents; and this, notwithstanding that the deeds provided a life estate therein for their mother, who was not consulted at that conference.

The junior attorney testified that on this occasion he told the children there was no need of such an arrangement. He did not tell them, however, that their father had conveyed various parcels of his real estate to them. If he was certain that the deeds had been delivered on December

4, 1942, the natural thing for him to do on January 10, 1943, five days after Mr. Moore's death, when he was consulted about the management of the real estate, was to inform the children of those deeds. That he did not do so was a circumstance which the trial justice could properly consider in weighing the junior attorney's testimony concerning the intention of Mr. Moore when he placed the deeds in the hands of the senior attorney. His finding that the junior attorney's failure to acquaint the children with their rights under the deeds could not be reconciled with such testimony was not unreasonable. And his finding that such testimony was left in a weakened condition in the circumstances is also not without support.

The way the deeds were handled by the attorneys after they were delivered to the senior attorney is consistent with his testimony that Mr. Moore said that he gave the deeds to him and his son "so that you men would use your discretion." Such appears to be the view of the trial justice and consequently he found that Mr. Moore did not intend to vest a present title in any of the several grantees when he handed the deeds to the senior attorney. From our consideration of the evidence there is a reasonable basis for such finding.

Whatever our own view might have been if we were considering the evidence originally is of no consequence, since we are here reviewing the action of the trial justice and are limited by the well-established rule that, on review by this court, his findings on conflicting evidence cannot be disturbed unless they are clearly wrong. Since we have stated that there are reasonable bases for such findings we cannot say that they are clearly wrong.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

Moss, J., did not participate in the decision.

*Francis J. O'Brien,* for complainants.

*Edward F. McElroy, Walter J. Hennessey,* for respondents.